**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SARAH MAGIER, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br>        v.<br><br>TRIBE MEDITERRANEAN FOODS, INC.,<br><br>                    Defendant. | **CASE NO.** _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sarah Magier ("Plaintiff"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge, against Defendant Tribe Mediterranean Foods, Inc. ("Tribe" or "Defendant").

## NATURE OF THE ACTION

1.      This is a consumer protection and false advertising class action. Defendant markets, advertises and distributes hummus which it prominently advertises as "All Natural."

2.      The products that Defendant advertises as "All Natural" (collectively, the "Mislabeled Products") include:

- Classic All Natural Hummus,

- Spicy Red Pepper All Natural Hummus,

- Mediterranean Style All Natural Hummus,

- Roasted Garlic All Natural Hummus,

- Sweet Roasted Red Pepper All Natural Hummus,

- Forty Spices All Natural Hummus,

- Spicy Chipotle All Natural Hummus,

- Mediterranean Olive All Natural Hummus,

- Everything All Natural Hummus, and

- Zesty Spice & Garlic All Natural Hummus.

3.      Defendant is well aware that its "All Natural" claims appeal to consumers. Not only are all of the Mislabeled Products prominently labeled as "All Natural" in all capital letters, but the phrase "All Natural" is even incorporated into the names of the products. The product pages of Defendant's website also showcase the Mislabeled Products' "All Natural" labeling.[1]

---

[1] *See, e.g.*, Products, available at: https://www.tribehummus.com/products (last visited July 23, 2015).

4.      In fact, none of the Mislabeled Products are "All Natural."  First, the Mislabeled Products contain unnatural genetically-modified ("GM") ingredients, including GM canola oil derived from GM rapeseed.  The World Health Organization ("WHO") defines genetically modified organisms ("GMOs"), which include GM crops, as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally."  GM crops are not natural, but man-made.  There are wide-ranging controversies related to GM crops, including health risks from ingesting GM foods and negative environmental effects associated with growing GM crops.  The use and labeling of GM foods is the subject of a variety of laws, regulations and protocols worldwide.

5.      Second, Defendant's "All Natural" claims are also false because the canola oil used in the Mislabeled Products is so heavily processed with chemicals, including the known neurotoxin hexane, that it bears no chemical resemblance to the crops from which it is derived.

6.      Third, Defendant's "All Natural" claims are also false and misleading because the Mislabeled Products each contain the synthetic chemical preservatives citric acid, potassium sorbate or both.

7.      Although the Mislabeled Products contain these unnatural ingredients, Defendant prominently labels every package of the Mislabeled Products sold in New York and throughout the United States as "All Natural."  Defendant does this because consumers perceive all natural foods as better, healthier and more wholesome.  As the market for all natural foods has grown rapidly in recent years, Defendant has sought to exploit this trend through false advertising.

8.      Plaintiff brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Mislabeled Products in New York and throughout the United States for: (1) violation of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, (2) breach of express warranty, (3) breach of the implied warranty of merchantability, (4) violation of New York Gen. Bus. Law § 349, (5) violation of New York Gen. Bus. Law § 350, (6) unjust enrichment, (7) intentional misrepresentation, (8) negligent misrepresentation and (9) fraud.

## PARTIES

9.    Plaintiff Sarah Magier is a citizen of New York who resides in New York, New York.  Ms. Magier has purchased Tribe hummus labelled "All Natural" at many locations and on many occasions since 2011.  Most recently, Ms. Magier purchased Tribe Original All Natural Hummus from Fairway Market in New York, New York in or about June 2015 for approximately $3.00.  Prior to purchase, Ms. Magier carefully read the labelling on the Tribe Original All Natural Hummus, including its description as "All Natural," and understood this description as a warranty that Tribe Original All Natural Hummus did not contain any artificial or synthetic ingredients.  Accordingly, Defendant's representation and warranty was part of the basis of the bargain in that Ms. Magier attributed value to the "All Natural" labelling and would not have purchased Tribe Original All Natural Hummus had she known that the labelling was false.  The Tribe Original All Natural Hummus, however, did not conform to its description as "All Natural."  In reliance on Defendant's representation and warranty, Ms. Magier paid a tangible increased cost for the Tribe Original All Natural Hummus, which was worth less than represented.  Ms. Magier also understood that the purchase involved a direct transaction between herself and Defendant because her purchase came with Defendant's representation and warranty that Tribe Original All Natural Hummus was "All Natural."

10.    Upon information and belief, Defendant Tribe Mediterranean Foods, Inc. is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 110 Prince Henry Drive, Taunton, Massachusetts 02780.  Tribe manufactures, markets and distributes its hummus products nationwide, including at retail outlets in this district.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees and costs, and at least one Class member is a citizen of a state different from the Defendant.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District, Plaintiff purchased the Mislabeled Products in this District and Plaintiff resides in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.     Defendant Deceptively Labels The Mislabeled Products As "All Natural"**

13.     For years, Defendant has prominently and conspicuously labeled and advertised the Mislabeled Products as "All Natural."  The labeling on the Mislabeled Products communicates a straightforward and material message:  Tribe hummus is 100% natural and, therefore, does not contain any artificial or synthetic ingredients.

14.     Defendant's misrepresentation that the Mislabeled Products are "All Natural" is conspicuously and prominently placed on the front packaging of the Mislabeled Products in capital letters and is visible without even picking up the Mislabeled Products from a store shelf. The term "All Natural" is even built into the names of the Mislabeled Products.

15.     By conspicuously and prominently placing the "All Natural" representations on the Mislabeled Products' packaging, Defendant has ensured that all consumers purchasing the Mislabeled Products are exposed to its "All Natural" claims.

16.     Defendant labels its Classic All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including pure canola oil and citric acid.





17.    Defendant labels its Spicy Red Pepper All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including pure canola oil and citric acid.



18.    Defendant labels its Mediterranean Style All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including pure canola oil and citric acid.



19.    Defendant labels its Roasted Garlic All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including canola oil, citric acid and potassium sorbate.





NUTRITION FACTS: Serv. Size: 2 Tbsp (28g/1oz) Servings: 8, Amount Per Serving: **Calories** 60 Fat Cal. 35 **Total Fat** 4g (6% DV) Sat. Fat 0g (0% DV) *Trans Fat 0g* **Cholesterol** 0mg (0% DV) **Sodium** 125mg (5% DV) **Total Carb.** 5g (2% DV) Fiber 1g (4% DV) Sugars 0g **Protein** 1g Vitamin A (0% DV) Vitamin C (0% DV) Calcium (0% DV) Iron (2% DV) Percent Daily Values (DV) are based on a 2,000 calorie diet.

**MADE WITH LOVE AND:** COOKED CHICKPEAS (CHICKPEAS, WATER), GARLIC, CANOLA OIL, TAHINI (GROUND SESAME), DRIED GARLIC, SEA SALT, CITRIC ACID, POTASSIUM SORBATE (ADDED TO MAINTAIN FRESHNESS).
*KEEP REFRIGERATED. Enjoy within a week of opening (but we doubt it will take that long).*

PRODUCED BY: TRIBE MEDITERRANEAN FOODS, TAUNTON, MA 02780 1.800.8.HUMMUS « tribehummus.com

8 OZ GARLIC

0 78902 67553 4

20.     Defendant labels its Sweet Roasted Red Pepper All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including canola oil, citric acid and potassium sorbate.



NUTRITION FACTS: Serv. Size: 2 Tbsp (28g/1oz) Servings: 8, Amount Per Serving: **Calories** 50 Fat Cal. 25 **Total Fat** 3g (5% DV) Sat. Fat 0g (0% DV) *Trans Fat 0g* **Cholesterol** 0mg (0% DV) **Sodium** 140mg (6% DV) **Total Carb.** 5g (2% DV) Fiber 1g (4% DV) Sugars 0g **Protein** 1g Vitamin A (0% DV) Vitamin C (0% DV) Calcium (0% DV) Iron (2% DV) Percent Daily Values (DV) are based on a 2,000 calorie diet.

**MADE WITH LOVE AND:** COOKED CHICKPEAS (CHICKPEAS, WATER), ROASTED RED BELL PEPPERS, TAHINI (GROUND SESAME), CANOLA OIL, TOMATO PUREE, GARLIC, SEA SALT, CITRIC ACID, DRIED RED BELL PEPPERS, DRIED ONION, POTASSIUM SORBATE (ADDED TO MAINTAIN FRESHNESS).
*KEEP REFRIGERATED. Enjoy within a week of opening (but we doubt it will take that long).*

PRODUCED BY: TRIBE MEDITERRANEAN FOODS, TAUNTON, MA 02780 1.800.8.HUMMUS « tribehummus.com

8 OZ ROASTED RED PEPPER

0 78902 67557 2

21.     Defendant labels its Forty Spices All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including pure canola oil and citric acid.



22.     Defendant labels its Spicy Chipotle All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including pure canola oil and citric acid.





NUTRITION FACTS: Serv. Size: 2 Tbsp (28g/1oz) Servings: 8, Amount Per Serving: **Calories** 50 Fat Cal. 30 **Total Fat** 3g (5% DV) Sat. Fat 0g (0% DV) **Trans Fat 0g** **Cholesterol** 0mg (0% DV) **Sodium** 140mg (6% DV) **Total Carb.** 5g (2% DV) Fiber 1g (4% DV) Sugars 0g **Protein** 1g Vitamin A (0% DV) Vitamin C (0% DV) Calcium (0% DV) Iron (4% DV) Percent Daily Values (DV) are based on a 2,000 calorie diet.

Produced By: Tribe Mediterranean Foods
110 Prince Henry Dr., Taunton, MA 02780
1-800-8-HUMMUS « tribehummus.com

8 OZ SPICY CHIPOTLE

**MADE WITH LOVE AND:** cooked chickpeas (chickpeas, cold filtered water), pure canola oil, chipotle peppers (chipotle peppers, tomato paste, water, vinegar, onions, sugar, salt, garlic), tahini (ground sesame), sea salt, citric acid, spices, natural garlic flavor, dried red bell peppers. *KEEP REFRIGERATED. Enjoy within a week of opening (but we doubt it will take that long).*

0  78902 40003  7

23.    Defendant labels its Mediterranean Olive All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including pure canola oil and citric acid.

NUTRITION FACTS: Serv. Size: 2 Tbsp (28g/1oz) Servings: 8, Amount Per Serving: **Calories** 60 Fat Cal. 30 **Total Fat** 3.5g (5% DV) Sat. Fat 0g (0% DV) **Trans Fat 0g** **Cholesterol** 0mg (0% DV) **Sodium** 130mg (5% DV) **Total Carb.** 5g (2% DV) Fiber 1g (4% DV) Sugars 0g **Protein** 1g Vitamin A (0% DV) Vitamin C (0% DV) Calcium (0% DV) Iron (2% DV) Percent Daily Values (DV) are based on a 2,000 calorie diet.

Produced By: Tribe Mediterranean Foods
110 Prince Henry Dr., Taunton, MA 02780
1-800-8-HUMMUS « tribehummus.com

8 OZ MEDITERRANEAN OLIVE

**MADE WITH LOVE AND:** cooked chickpeas (chickpeas, cold filtered water), pure canola oil, green olives, tahini (ground sesame), water, kalamata olives, salt, citric acid, spices, natural garlic flavor, acetic acid. May contain an occasional olive pit fragment. *KEEP REFRIGERATED. Enjoy within a week of opening (but we doubt it will take that long).*



0  78902 41012  8

24.    Defendant labels its Everything All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including canola oil, citric acid and potassium sorbate.



25. Defendant labels its Zesty Spice & Garlic All Natural Hummus as "All Natural," but it contains artificial ingredients and synthetic substances, including pure canola oil and citric acid.





26.     In summary, the Mislabeled Products contain the following artificial ingredients

and synthetic substances:

| **Product** | **Non-Natural Ingredients** |
|---|---|
| Classic All Natural Hummus | Pure canola oil, citric acid |
| Spicy Red Pepper All Natural Hummus | Pure canola oil, citric acid |
| Mediterranean Style All Natural Hummus | Pure canola oil, citric acid |
| Roasted Garlic All Natural Hummus | Canola oil, citric acid, potassium sorbate |
| Sweet Roasted Red Pepper All Natural Hummus | Canola oil, citric acid, potassium sorbate |
| Forty Spices All Natural Hummus | Pure canola oil, citric acid |
| Spicy Chipotle All Natural Hummus | Pure canola oil, citric acid |
| Mediterranean Olive All Natural Hummus | Pure canola oil, citric acid |
| Everything All Natural Hummus | Canola oil, citric acid, potassium sorbate |
| Zesty Spice & Garlic All Natural Hummus | Pure canola oil, citric acid |

**B.     The Mislabeled Products Are Not All Natural Because They Contain GMOs**

27.     Genetically modified crops do not occur in nature, and as such are not "all

natural."  To the contrary, genetically modified crops are genetically manipulated from their

natural state.  For example, Monsanto, one of the largest producers of genetically modified crop

seed, defines "genetic modification (genetic engineering)" as "[t]he technique of removing,

modifying or adding genes to a living organism via genetic engineering or other more traditional

methods."[2]  Monsanto also defines GMO as "any organism the genetics of which have been

_____

[2] *See* Glossary, available at: http://www.monsanto.com/newsviews/pages/glossary.aspx (last
visited July 23, 2015).

altered through the use of modern biotechnology to create a novel combination of genetic material."[3]

28.    The WHO's definition of GMOs is consistent with how Monsanto defines them: "Genetically modified (GM) foods are foods derived from organisms whose genetic material (DNA) has been modified in a way that does not occur naturally, e.g. through the introduction of a gene from a different organism."[4]  The WHO also cautions that "[a]ll GM foods should be assessed before being allowed on the market."[5]

29.    The United States Environmental Protection Agency ("EPA") has distinguished between conventional breeding of plants "through natural methods, such as cross-pollination" and genetic engineering.  "Conventional breeding is a method in which genes for pesticidal traits are introduced into a plant through natural methods, such as cross-pollination."  "Genetically engineered plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material."[6]

30.    Romer Labs, a company that provides diagnostic services to the agricultural industry, including tests to detect and determine the existence of GM crops, defines GM crops as "[a]griculturally important plants [that] are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to express novel traits that normally would not appear in nature, such as herbicide or insect resistance.  Seed harvested from GMO plants will also contain these modifications."[7]

---

[3] *Id.*

[4] *See* Food, Genetically Modified, available at: http://www.who.int/topics/food_genetically_ modified/en/ (last visited July 23, 2015).

[5] *Id.*

[6] *See* Environmental Protection Agency, EPA Questions & Answers, Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules, (July 19, 2001) at http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf (last visited July 23, 2015).

[7] *See* Romer Labs, Genetically Modified Organisms, available at: http://www.romerlabs.com/en/ knowledge/gmo/ (last visited July 23, 2015).

31.     As indicated by the various industry, government and health protection agency organizations cited above, GM crops and GMOs are not "all natural."  All products made from GM crops and GMOs are likewise not "all natural."

32.     Canola oil is derived from rapeseed, a plant that has been genetically engineered by Monsanto and other companies to be resistant to the effects of herbicides like Roundup. Despite the fact that the Mislabeled Products are all labelled "All Natural," Defendant has acknowledged that the canola oil used in the Mislabeled Products is made from GM rapeseed.

33.     The Mislabeled Products all contain either "canola oil" or "pure canola oil." Upon information and belief, there is no difference between "canola oil" and "pure canola oil." Neither is "All Natural."

34.     Defendant's "All Natural" representations are deceptive, false and misleading insofar as the Mislabeled Products contain canola oil made from GM rapeseed.  Plaintiff, and all other consumers similarly situated, was thus injured in fact by purchasing the Mislabeled Products.

**C.     The Mislabeled Products Are Not All Natural Because Canola Oil Is Heavily Processed With Synthetic Chemicals**

35.     Independent of the use of GM crops in the Mislabeled Products, Defendant's "All Natural" claims are false because the canola oil used in the Mislabeled Products is so heavily processed that it no longer bears any chemical resemblance to the rapeseed from which it is sourced.

36.     Many types of oil are extracted through processes that allow the oils to retain their natural and original chemical composition.  Cold pressed olive oil, for example, is produced through the mechanical process of compressing the oil from olives so that, chemically, the oil at the end of the process is the same as it was at the beginning of the process.

37.     In contrast, the processes used to create the canola oil used in the Mislabeled Products go well beyond mere extraction techniques, and result in chemically altered goods. Canola oil undergoes several distinct chemical processes: (1) hexane extraction; (2) chemical refining; (3) bleaching; (4) deodorizing; and (5) conditioning:

a.    **Hexane Extraction**  The manufacturer first physically presses the rapeseed, which extracts only a small amount of oil.  Next, the plant is treated with hexane, a neurotoxin linked to cancer and other major health problems in studies conducted on animals, to extract the remaining crude oil.  Residual hexane may be present in the final product.

b.    **Chemical Refining**  After the crude oil has been extracted, it is neutralized with an alkaline soap solution—typically sodium hydroxide and/or phosphoric acid—that separates and removes free fatty acids ("FFAs").  The oil is separated from byproducts using centrifugal separation.  Oftentimes potassium hydroxide, a corrosive acid, is also used in the process.

c.    **Bleaching**  After neutralization, the canola oil is bleached with additional cleaning solutions and processes to lighten the oil's color.

d.    **Deodorizing**  The canola oil is then deodorized with yet more cleaning solutions and processes to minimize its odor.  The deodorization process creates some trans-fats that remain in the final product.

e.    **Conditioning**  After being bleached and deodorized, the canola oil is conditioned using a high-concentration phosphoric acid, consumption of which has been linked to lower bone density as well as chronic kidney disease.

38.    After going through these chemical processes, the canola oil used in the Mislabeled Products is chemically distinct from the oil originally found in rapeseed.  As such, the canola oil used in all of the Mislabeled Products is not natural and none of the Mislabeled Products can accurately be described as "All Natural."

**D.    The Mislabeled Products Are Not All Natural Because They Contain Synthetic Ingredients**

39.    The Mislabeled Products are also not all natural because they each contain the synthetic preservatives citric acid, potassium sorbate or both.

40.    Citric acid is made synthetically by fermenting glucose.  The process of making citric acid utilizes mold cultures with sugars derived from GM sugar beets and GM corn.  Citric

14

acid increases the acidity of a microbe's environment, which makes it harder for bacteria and mold to survive and reproduce.  Citric acid functions as a preservative.

      41.     Potassium sorbate is a chemical preservative pursuant to 21 C.F.R. § 182.3640.  It is a potassium salt version of sorbic acid, a polyunsaturated fat used to inhibit mold growth that is made by combining crotonaldehyde and ketene.  Potassium sorbate is manufactured synthetically on an industrial scale by combining potassium hydroxide and sorbic acid.

      42.     The FDA has specifically warned companies that products containing citric acid and/or potassium sorbate should not be labeled "All Natural."  For example, in an August 16, 2001 Warning Letter to Oak Tree Farm Dairy, the FDA stated:

> The term "all natural" on the "OAKTREE ALL NATURAL LEMONADE" label is inappropriate because the product contains **potassium sorbate**.  Although FDA has not established a regulatory definition for "natural," we discussed its use in the preamble to the food labeling final regulations (58 Federal Register 2407, January 6, 1993, copy enclosed).  FDA's policy regarding the use of "natural," means nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected to be in the food.  The same comment applies to use of the terms "100 % NATURAL" and "ALL NATURAL" on the "OAKTREE REAL BREWED ICED TEA" label because it contains **citric acid**.[8]

      43.     Similarly, in an August 29, 2001 Warning Letter to the Hirzel Canning Company regarding its canned tomato products, the FDA stated:

> [T]he Dei Fratelli® "CHOPPED TOMATOES ONIONS & GARLIC" and "CHOPPED MEXICAN TOMATOES & JALAPENOS" labels bear the term "ALL NATURAL," but according to the ingredient statements, calcium chloride and **citric acid** are added to the products.  We have not established a regulatory definition for the term "natural," however; we discussed its use in the ream le [sic] to the food labeling final regulations (58 Federal Register 2407, January 6, 1993).  FDA's policy regarding the use [of] "natural," means that nothing artificial or synthetic has been included in, or as been added to, a food that would not normally be expected to be in the food.  Therefore, the addition of

---

[8] *See Janney v. Mills*, 944 F. Supp. 2d 806, 812-13 (N.D. Cal. 2013) (emphasis added).

calcium chloride and **citric acid** to these products preclude use of the term "natural" to describe this product.[9]

44.     More recently, on July 22, 2011, the FDA issued a warning letter to Bagels Forever, Inc. stating that "Your product is manufactured with infused wild dry blueberries that contain **potassium sorbate**, which is listed in 21 CFR 182.3640 as a chemical preservative; therefore, your product may not make the claims 'All Natural' and 'No Preservatives.'"[10]

45.     As noted above, all of the Mislabeled Products contain either citric acid, potassium sorbate or both.  Accordingly, despite their labelling, none of the Mislabeled Products can accurately be described as "All Natural."

**E.     Defendant's False and Misleading Advertising is Likely to Deceive Reasonable Consumers**

46.     Reasonable consumers attach importance to an "All Natural" claim when making a purchasing decision.  Defendant's false and misleading representations and omissions are thus likely to deceive reasonable consumers.

47.     Reasonable consumers must and do rely on food label representations and information in making purchase decisions.

48.     Defendant's statement that the Mislabeled Products are "All Natural" is material to a reasonable consumer's purchase decision because reasonable consumers, such as Plaintiff, care whether food products contain unnatural, synthetic, artificial, and/or GM ingredients, especially when a product claims to be "All Natural."

49.     According to a June 2014 consumer survey conducted by Consumer Reports, more than 8 out of 10 consumers believe that packaged foods carrying the "natural" label should come from food that does not include artificial ingredients (87%) or GMOs (85%).[11]

---

[9] *Id.* (emphasis added).

[10] *See* July 22, 2011 Warning Ltr. from Gerald J. Berg, Director, Minneapolis District to Barry L. Berman, President/Owner of Bagels Forever, Inc. (emphasis added), available at: http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm265756.htm (last visited July 23, 2015).

[11] *See* PR Newswire, Consumer Reports Survey: Majority Of Americans Look For 'Natural' Label When Shopping, Believe It Carries Benefits Despite The Contrary, available at: http://www.prnewswire.com/news-releases/consumer-reports-survey-majority-of-americans-

50.     Defendant markets and advertises the Mislabeled Products as "All Natural" to increase sales derived from the Mislabeled Products.  Defendant is well aware that claims of food being "All Natural" are material to reasonable consumers.

51.     Upon information and belief, in making the false, misleading and deceptive representations and omissions, Defendant knew and intended that consumers would pay a price premium for the Mislabeled Products if it were labeled "All Natural."  Indeed, Defendant prominently marked the front packaging of the Mislabeled Products with the term "All Natural" in all capital letters, and even incorporated the term "All Natural" into names of the Mislabeled Products, precisely because it knew that consumers like Plaintiff attach great importance to the absence of artificial ingredients and synthetic substances in food products.

## CLASS REPRESENTATION ALLEGATIONS

52.     Ms. Magier seeks to represent a class defined as all persons in the United States who purchased the Mislabeled Products (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

53.     Ms. Magier also seeks to represent a subclass defined as all Class members who purchased the Mislabeled Products in New York (the "New York Subclass" or the "Subclass").

54.     Members of the proposed Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclass number in the millions.  The precise number of Class and Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class and Subclass members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third party retailers and vendors.

55.     Common questions of law and fact exist as to all Class and Subclass members and predominate over questions affecting only individual Class and Subclass members.  Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of the Mislabeled Products is false and misleading.

look-for-natural-label-when-shopping-believe-it-carries-benefits-despite-the-contrary-263259671 .html (last visited July 23, 2015).

56.     The claims of the named Plaintiff are typical of the claims of the Class and Subclass in that the named Plaintiff was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Mislabeled Products and suffered a loss as a result of that purchase.

57.     Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class or Subclass members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions and she intends to prosecute this action vigorously.  The interests of Class and Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

58.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class and Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

59.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

61.     The Mislabeled Products are consumer products as defined in 15 U.S.C. § 2301(1).

62.     Plaintiff and proposed Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

63.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

64.     In connection with the sale of the Mislabeled Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), by representing that the Mislabeled Products are "All Natural."  Thus, a reasonable consumer would expect that the Mislabeled Products do not contain any artificial or synthetic ingredients.

65.      In fact, the Mislabeled Products each contain one or more artificial ingredients or synthetic substances.

66.     By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiff and proposed Class and Subclass members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and proposed Class and Subclass members.

67.     Plaintiff and proposed Class and Subclass members were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased the Mislabeled Products had known that they each contain one or more artificial ingredients or synthetic substances, (b) they overpaid for the Mislabeled Products because they are sold at a price premium when compared to similar products that do not contain this misrepresentation, and (c) the Mislabeled Products did not have the characteristics, uses, or benefits as promised, namely that they are "All Natural."

68.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class are entitled to recover the damages caused to them by Defendant's breach of written and implied warranty, which either constitute the full purchase price of the Mislabeled Products or the difference in value between the Mislabeled Products as warranted and the Mislabeled Products as sold.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the Class and Subclass in connection with the commencement and prosecution of this action.

## COUNT II

### Breach Of Express Warranty

69.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

71.     In connection with the sale of Tribe hummus, Defendant, as the designer, manufacturer, marketer, distributor and/or seller issued written warranties by representing that the Mislabeled Products are "All Natural."

72.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class regarding the Mislabeled Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class and New York Subclass, thereby creating an express warranty that Defendant would conform to those affirmations of fact, representations, promises and descriptions.

73.     In fact, the Mislabeled Products each contain one or more artificial ingredients or synthetic substances.

74.     Plaintiff and proposed Class and Subclass members were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Mislabeled Products had known that they each contain one or more artificial ingredients or synthetic substances, (b) they overpaid for the Mislabeled Products because they are sold at a price premium when compared to similar products that do not contain this misrepresentation, and (c) the Mislabeled Products did not have the characteristics, uses, or benefits as promised, namely that they are "All Natural."

## COUNT III

### Breach Of The Implied Warranty Of Merchantability

75.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

76.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

77.     Defendant, as the designer, manufacturer, distributor and seller, impliedly warranted that the Mislabeled Products were fit for their intended purpose in that the products made for consumption were free from unnatural ingredients.  Defendant did so with the intent to induce Plaintiff and proposed Class and Subclass members to purchase the Mislabeled Products.

78.     Defendant breached it implied warranty because the Mislabeled Products each contain one or more artificial ingredients or synthetic substances.

79.     Plaintiff and proposed Class and Subclass members were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Mislabeled Products had known that they each contain one or more artificial ingredients or synthetic substances, (b) they overpaid for the Mislabeled Products because they are sold at a price premium when compared to similar products that do not contain this misrepresentation, and (c) the Mislabeled Products did not have the characteristics, uses, or benefits as promised, namely that they are "All Natural."

80.     Neither Plaintiff nor the proposed Class or Subclass members altered the Mislabeled Products after purchase.

## COUNT IV

### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

81.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

82.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass.

83.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the packages of the Mislabeled Products.

84.     The foregoing deceptive acts and practices were directed at consumers.

85.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature of the ingredients contained in the Mislabeled Products.

86.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased the Mislabeled Products had known that they each contain one or more artificial ingredients or synthetic substances, (b) they overpaid for the Mislabeled Products because they are sold at a price premium when compared to similar products that do not contain this misrepresentation, and (c) the Mislabeled Products did not have the characteristics, uses, or benefits as promised, namely that they are "All Natural." As a result, Plaintiff and members of the Class have been damaged either in the full amount of the purchase price of the Mislabeled Products or in the difference in value between the Mislabeled Products as warranted and the Mislabeled Products as actually sold.

87.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars per violation, whichever is greater, three times actual damages and reasonable attorneys' fees.

## COUNT V

### False Advertising, New York Gen. Bus. Law § 350

88.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

89.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass.

90.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting the nature of the ingredients contained in Tribe hummus.

91.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

92.    This misrepresentation has resulted in consumer injury or harm to the public interest.

93.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased the Mislabeled Products had known that they each contain one or more artificial ingredients or synthetic substances, (b) they overpaid for the Mislabeled Products because they are sold at a price premium when compared to similar products that do not contain this misrepresentation, and (c) the Mislabeled Products did not have the characteristics, uses, or benefits as promised, namely that they are "All Natural." As a result, Plaintiff and members of the Class have been damaged either in the full amount of the purchase price of the Mislabeled Products or in the difference in value between the Mislabeled Products as warranted and the Mislabeled Products as actually sold.

94.    On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater, three times actual damages and reasonable attorneys' fees.

## COUNT VI

### Unjust Enrichment

95.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

96.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

97.    Plaintiff and the proposed Class and Subclass members conferred benefits on Defendant by purchasing the Mislabeled Products.

98.    Defendant has knowledge of such benefits.

99.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the proposed Class and Subclass members' purchases of the Mislabeled Products. Retention of those moneys under these circumstances is unjust and inequitable because

Defendant misrepresented that the Mislabeled Products are "All Natural" when, in fact, they contain artificial and synthetic ingredients.

100.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and proposed Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the proposed Class and Subclass members for its unjust enrichment, as ordered by the Court.

## COUNT VII

### Intentional Misrepresentation

101.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

102.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

103.    At the times and locations and in the manner set forth in detail above, Defendant represented to Plaintiff and the Class that the Mislabeled Products were "All Natural."

104.    Defendant's representations were false and misleading because the Mislabeled Products each contain one or more artificial ingredients or synthetic substances.

105.    Defendant knew that its statements and representations regarding the nature and qualities of the Mislabeled Products were false and misleading at the time these statements or representations were made.

106.    Defendant made the misrepresentations alleged herein with the intent to induce and persuade Plaintiff and proposed Class and Subclass members to purchase the Mislabeled Products.

107.    Defendant further withheld and omitted material information regarding the Mislabeled Products with the intent to induce and persuade Plaintiff and the Class to purchase the Mislabeled Products.

108.    Plaintiff and the Class reasonably relied on Defendant's false and misleading statements and misrepresentations, and on the absence of the material information that Defendant omitted, when they made the decision to purchase the Mislabeled Products.

109.    Plaintiff and proposed Class and Subclass members were injured as a direct and proximate result of Defendant's intentional misrepresentations because (a) they would not have purchased the Mislabeled Products had known that they each contain one or more artificial ingredients or synthetic substances, (b) they overpaid for the Mislabeled Products because they are sold at a price premium when compared to similar products that do not contain this misrepresentation, and (c) the Mislabeled Products did not have the characteristics, uses, or benefits as promised, namely that they are "All Natural."

110.    Plaintiff's and the Class and Subclass's reliance on Defendant's statements and representations as to the nature and characteristics of the Mislabeled Products were reasonable. As a result, Defendant is guilty of malice, oppression and fraud, and Plaintiff and all proposed Class and Subclass members are therefore entitled to recover exemplary or punitive damages.  In addition, Plaintiff and all proposed classes seek attorneys' fees and costs as allowed by statute.

## COUNT VIII

### Negligent Misrepresentation

111.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

112.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

113.    As discussed above, Defendant represented that the Mislabeled Products were "All Natural," and failed to disclose that the Mislabeled Products each contain one or more artificial ingredients or synthetic substances.  Defendant had a duty to disclose this information.

114.    At the time Defendant made these representations, Defendant knew or should have known that these representations were false, or made them without knowledge of their truth or veracity.

25

115.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Mislabeled Products.

116.    The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and proposed Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and proposed Class and Subclass members to purchase the Mislabeled Products.

117.    Plaintiff and proposed Class and Subclass members would not have purchased the Mislabeled Products if the true facts had been known.

118.    The negligent actions of Defendant caused damage to Plaintiff and proposed Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IX

### Fraud

119.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

120.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

121.    As discussed above, Defendant provided Plaintiff and proposed Class and Subclass members with false or misleading material information and failed to disclose material facts about the Mislabeled Products, namely that the Mislabeled Products each contained one or more artificial ingredients or synthetic substances.  These misrepresentations and omissions were made with knowledge of their falsehood.

122.    The misrepresentations and omissions made by Defendant, upon which Plaintiff and proposed Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and proposed Class and Subclass members to purchase the Mislabeled Products.

123.     The fraudulent actions of Defendant caused damage to Plaintiff and proposed
Class and Subclass members, who are entitled to damages and other legal and equitable relief as
a result.

## RELIEF DEMANDED

124.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly
situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.     For an order declaring that Defendant's conduct violates the statutes and common law duties referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class and the New York Subclass on all counts asserted herein;

d.     For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For injunctive relief as pleaded or as the Court may deem proper; and

h.     For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  July 23, 2015

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____/s  Joshua D. Arisohn_____
           Joshua D. Arisohn

Scott A. Bursor
Joseph I. Marchese
Joshua D. Arisohn
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail: scott@bursor.com
            jmarchese@bursor.com
            jarisohn@bursor.com

*Attorneys for Plaintiff*